IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA :
: CRIMINAL ACTION
v. :
: NO. 1:10-cr-0086-26-RWS-ECS
REMBERTO ARGUETA :
*a/k/a* Pitufo :

**REPORT AND RECOMMENDATION**

**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Defendant's motion to suppress statements. [Doc. 378]. Defendant seeks to suppress statements made by him on June 26, 2008, and on March 23, 2010. The first challenged statement was made at the Gwinnett County Detention Center. The second statement was made at the Immigration and Customs Enforcement ("ICE") removal office located at 180 Spring Street in Atlanta. Agent Jason Tyler with ICE was present for both statements. The motion to suppress came on for hearing before the undersigned on September 27, 2011, and has now been transcribed. [Doc. 594]. Thereafter, Defendant filed his brief and the government responded. Defendant did not file a reply brief within the time allowed and the record is therefore now complete and ready for report and recommendation to the District Judge. For the reasons stated below, the undersigned **RECOMMENDS** that the motion to suppress be **DENIED.**

**I.**

**Findings of Fact**

The facts developed at the hearing show the following: ICE Agent Jason Tyler, along with another ICE agent, Albert Prieto, and an FBI agent, interviewed Defendant on June 26, 2008, at the Gwinnett County Detention Center. [7, 10].[1] Defendant had previously been arrested on October 24, 2007, on the state aggravated assault charges and was represented by counsel when the agents interviewed him in June of 2008. [66]. He had pled guilty to the state charges by the time he was interviewed in 2008 at the jail. [76].

The officers interviewed Defendant in the booking area. Defendant was advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), approximately 15 minutes into the interview. [17]. His rights were read to him by Agent Prieto in Spanish. [12, 53]. Defendant signed an acknowledgment and waiver of his Miranda rights, witnessed by an agents Tyler and Prieto. [47-48]. See Gov. Ex. 1. Defendant also orally waived his rights. [48, 54]. Agent Prieto is a native Spanish speaker. [12, 52]. Agent Tyler also speaks Spanish. [7].

---

[1] References to the transcript of the September 27, 2011, evidentiary hearing will be cited as "[Page]."

AO 72A
(Rev.8/82)

No promises or threats were made to force Defendant to give a statement. [12-13, 56-57]. Defendant appeared to understand the questioning. [13]. He did not appear to be drunk or high. [14]. He did not invoke his rights. The agents knew that Defendant was represented on the state aggravated assault charges but did not contact his attorney. [40]. Defendant was not questioned about the aggravated assault charge, but he was questioned regarding an investigation of MS-13 gang activity that the agents were conducting. [10, 49].

On March 16, 2010, after he was released from custody on his state charges, Defendant was taken to an ICE detention facility. [73]. Then, on March 23, Defendant was taken to another ICE detention facility at 180 Spring Street, where he was interviewed again by ICE Agents Tyler and Matt Ballard. [14]. By this time, Defendant had been indicted in the instant case and Agents Tyler and Ballard went to pick him up from ICE detention and take him into custody on the federal indictment. [19, 21-22]. Defendant testified that he had been awakened around midnight on March 22 and brought to the Spring Street facility in Atlanta by bus. He arrived in Atlanta around three o'clock in the morning. [79]. He testified that he spent the night shackled by his ankles to another inmate in a room where he could not sleep. [74- 76, 80]. He thought he was going

3

"home," meaning that he thought he was going to be deported to El Salvador. [74, 81].

The interview with Tyler and Ballard occurred at about nine-thirty in the morning. [79]. Defendant was interviewed in Spanish by Agent Tyler. [15]. He was read his Miranda rights in Spanish by Agent Tyler and signed a written acknowledgment and waiver of his rights. [15, 61]. See Gov. Ex. 2. Agent Ballard, who also witnessed the waiver with Agent Tyler, is likewise fluent in Spanish. [35-36, 47-48, 60]. Defendant also orally waived his rights. [47-48]. Defendant was not threatened nor were any promises made to induce his statement. [16, 62]. The Miranda warnings were given approximately ten minutes into the interview. [17]. Defendant did not invoke his rights. [17]. The agents did not initially tell Defendant that he had been indicted or that he was going into custody on a federal charge. [31-32].

Defendant testified he had a first grade education and that he did not read Spanish well. [68]. He had encountered Agent Tyler before these interviews and knew him. [69-70]. Defendant confirmed his signature on Government Ex. 1, [71], but denied that he signed Government Ex. 2. [77]. When he gave the interview in 2010, he did not know he had already been charged and was about to be arrested on the federal charges. [78]. He testified that he did not understand

4

his rights; in particular, he did not understand that he did not have to talk to the agents or that he had the right to talk to a lawyer. He testified that his 2010 statement "was a lie." [84-85].

## II.
## Discussion

Defendant argues that his 2010 statement was coerced and involuntary and that his <u>Miranda</u> waivers were not knowing, that is, were not made with full awareness of his rights and the consequences of waiver. Def's Brief, [Doc. 621 at 5, 8]. Defendant submits that his 2010 statement was the result of "coercive police activity" in that he was deprived of sleep and not told of the nature of the charges against him before he was questioned. Defendant also argues as to both the 2010 and 2008 statements that, despite Defendant's written and oral waivers of his rights, the waivers were not knowing and intelligent, as demonstrated by the fact that Defendant only had a first grade education; that he did not speak English; that he was a native of a foreign country; and that he asked the agents to repeat certain things during the questioning.

The government responds that there was no evidence of overreaching by the police through the use of any promises or threats or physical punishment. The government points to the oral

5

and written waivers of Miranda rights by Defendant given under circumstances that the government contends show no overreaching or coercion. The government also points to Defendant's testimony that the 2010 statement was fabricated ("a lie") – in the face of the two agents' testimony to the contrary - as undermining his credibility. The government submits that the evidence does not show that the interview with Defendant in 2010 was orchestrated or "set up" by the agents in order to coerce a waiver and an involuntary statement. Rather, the government contends that the totality of the circumstances shows that the waivers and statements were voluntary, knowing and intelligent.

Under Miranda v. Arizona, 384 U.S. 436 (1966), before questioning a suspect in custody, law enforcement must inform the suspect that he has the right to remain silent, that his statements may be used against him at trial, that he has a right to an attorney during questioning, and that, if he cannot afford an attorney, one will be appointed for him. Miranda, 384 U.S. at 467-73. Miranda rights may be waived, however, id. at 475; and, even if Miranda warnings are given, evidence that is coerced must be excluded. Colorado v. Connelly, 479 U.S. 157, 167 (1986) (dictum). In general, the government must prove that the defendant voluntarily, knowingly,

6

and intelligently waived his or her Miranda rights. Miranda, 384 U.S. at 475.

> The inquiry [into waiver] has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

Moran v. Burbine, 475 U.S. 412, 421 (1986). The government bears the burden of proving waiver at least by a preponderance of the evidence. Missouri v. Seibert, 542 U.S. 600, 609 n.1 (2004); Connelly, 479 U.S. at 168.

Waiver of Miranda does not, however, end the inquiry. The statements must also have been made voluntarily. Chavez v. Martinez, 538 U.S. 760, 769-70 (2003). The voluntariness of a statement must be ultimately be assessed under the totality of the circumstances, considering such factors as the defendant's intelligence, the length of detention, the nature of the interrogation, and the use of any physical force against the defendant. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) (citations omitted); Miller v. Dugger, 838 F.2d 1530, 1536 (1988) (the district court must consider the totality of the circumstances in assessing whether police conduct was causally related to the confession); United States v. Thompson, 422 F.3d

7

1285, 1295 (11th Cir. 2005) (same); United States v. Estelan, 156 F. App'x. 185, 193 (11th Cir. 2005) (same). The inquiry focuses on whether the defendant's free will was overborne by any improper influence of law enforcement. Connelly, 479 U.S. at 170. See also United States v. Gonzalez, 71 F.3d 819, 828 (11th Cir. 1996) (holding that in the context of voluntariness of consent to search, "the absence of official coercion is a *sine qua non* of effective consent") (citations omitted). "[A] confession induced by threats or promises is not voluntary." United States. v. Vera, 701 F.2d 1349, 1364 (11th Cir. 1983) (citing Bram v. United States, 168 U.S. 532, 542 (1897)).

In this case, the evidence does not warrant a finding that either of the Miranda waivers was involuntary or was not knowing and intelligent. Neither were the statements coerced nor Defendant's free will overborne. Defendant was not threatened or promised anything. Although Defendant was in custody on both occasions, he was seated comfortably in a room with at most two or three officers; he appeared to be alert and to understand; there were no guns drawn; he had not been deprived of food or water; he was not struck or even touched; there is no evidence that the interviews were prolonged. As for the Miranda waivers, they were read to Defendant in his native language and shown to him in written form. He indicated his assent

both orally and in writing.[2] The officers repeated anything that they felt Defendant may not have understood and anything he asked to be repeated. Although Defendant testified that he had not gotten much, if any, sleep the night before, there is nothing to support a finding that the officers set Defendant up to be sleep deprived or that Defendant was so sleep deprived that he did not understand what the officers were asking him, either in granting the waiver or answering their questions. There is no evidence that the interviews were inordinately long or extended.

In short, considering the totality of the circumstances, the undersigned concludes that the Miranda waivers given by Defendant in connection with the 2008 and 2010 statements were knowing, intelligent and voluntary, and that Defendant's statements made after these waivers were neither coerced nor otherwise involuntary. It is a rare case where a statement will be found to have been compelled despite the fact that valid Miranda warnings have been given and voluntarily waived. Dickerson v. United States, 530 U.S.

---

[2] Even though Defendant said he did not sign Gov. Ex. 2, both Agents present for the 2010 statement, Tyler and Ballard, testified that Defendant signed the form that the Court concludes that he did sign the waiver. Likewise, Defendant's testimony that his statement "was a lie," to the extent he meant he did not make such a statement, is not credible.

9

428, 444 (2000). This is not one of those rare cases. Accordingly, the motion to suppress should be **DENIED**.

### III.
### Conclusion

In conclusion, the undersigned finds that the 2008 and 2010 statements made by Defendant were voluntary and that his waivers of his rights under Miranda were knowing, intelligent, and voluntary. Accordingly, **IT IS RECOMMENDED** that the motion to suppress, [Doc. 378], be **DENIED.** It appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this **defendant** be and is hereby **CERTIFIED** as ready for trial.[3]

**SO REPORTED AND RECOMMENDED**, this 24th day of April, 2012.

*S/ E. Clayton Scofield III*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

---

[3] This Court observes that this defendant has been indicted with additional defendants and that matters pertaining to such co-defendant are still pending. Pursuant to 18 U.S.C. §3161 (h)(7) (the Speedy Trial Act), the time for commencing the trial of these defendants may be stayed until such time as all defendants have been certified ready for trial. Hence, it is not necessary to place the above-named defendant's case on the calendar for trial at this time.

10